Incorporated at all. Oral argument not to exceed 15 minutes per side. Brian Backus Brown for the appellant. May it please the court Brian Brown appearing on behalf of CFE Racing Products Incorporated at all. CFE Racing was the plaintiff in the underlying case. There's actually three appeals before the panel this morning. CFE Racing is the appellant in the first appeal. It's regarding a denial of attorney's fees under state law. Denial of cancellation of a registration, trademark registration. And an appeal of the scope of the permanent injunction entered by the trial court. CFE Racing is also the appellee in two appeals. First, the defendant's appeal of a denial of defendant's motion for a judgment as a matter of law. And denial of a motion for a new trial. And the third appeal concerns a contempt order. Because of the way the case is laid out, I would like to reserve five minutes in which to address any rebuttal. And the second appeal is brought by defendants. Yeah, well the way I think that's going to be most productive for the case to be heard. I know we have cross appeals. It's for each of you to handle your arguments in the 15 minutes that you have allotted. So you could just reserve rebuttal. And counsel for BMF can handle its entire argument in the course of its argument now. And we're not going to have these multiple rebuttals. Thank you. And so I will just reserve five minutes. This appeal results from the trial judge's failure to fully recognize a jury verdict. This trademark infringement case was tried to a jury over three days. After that, the jury, sitting as finders of fact, made a number of critical findings. First, the jury found that defendants' marks, which were BMF wheels, various logos with BMF wheels, and various permutations of the letters BMF, were likely to cause confusion with the plaintiff's plain BMF registered mark. That's the first jury finding. That is, the jury was comparing the defendant's marks against plaintiff's word mark in just the word or the letters BMF. It's a non-stylized version of BMF. Second, the jury found that the defendant's logos, specifically, were likely to cause confusion with valid unregistered marks owned by the plaintiff. So for this finding, the jury was comparing defendant's logos to specific unregistered trademarks that the plaintiff had acquired rights in, and that was the plaintiff's logo, CFE Racing's logos. Lastly, at the end of all that, the jury determined that there wasn't proof of monetary damage and did not award any monetary damages to CFE Racing. From our perspective, the case was never really about monetary damages. This appeal followed. While the court issued a judgment in CFE's favor following the jury verdict, it failed to fully account for the jury's findings of a likelihood of confusion in three critical ways. First, the court refused to award CFE its attorney's fees under the Michigan Consumer Protection Act. The parties agreed that a finding of likelihood of confusion would result in liability under the Consumer Protection Act. That finding of likelihood of confusion mandates an award of attorney's fees. The amount is to be determined by the trial court whether it's reasonable or not, but attorney's fees are required under the Act. Second, the court entered only a limited injunction, but permitted defendants to continue using the letters BMF and its marks. In our view, this is an impermissibly... But they're supposed to use BMF wheels, aren't they? They're supposed to use BMF wheels, that's correct. But... That arguably is not as offensive as using BMF. The term wheels is really a generic term. It doesn't affect the mark, and you have to look at the similarity between the two marks. The jury found BMF wheels to be confusing. The jury didn't say, we find the defendant's use of BMF alone to be confusing. We found BMF wheels to be confusing. And it's really the plain mark, BMF, that must be required to be found to be confusing. That's necessarily inferred from the jury's finding. Can you continue to talk about the scope? The third issue raised, and I'm not going to address it unless there are questions, our cancellation, I think that was well-briefed, but I would like to discuss more the scope of the injunction and the award of attorney's fees under the MCPA. I think the question... So in terms of the scope of the injunction, what do you want the injunction to do? Do you want it to prohibit BMF wheels? Is that what you want? Prohibit the defendants from using the phrase BMF in a mark. Including in BMF wheels. Including in BMF wheels, including in a logo, including in BMF in conjunction with another term which it modifies with another type of product, with BMF rims, which presumably might be allowed by the court in some circumstances. And we review the scope of the injunction for abuse of discretion? That's correct. But what we have to look at the scope of the injunction in the context of the factual determinations by the jury, and those factual determinations are binding on Judge Lawson, the trial court judge here. He just didn't give effect to that factual finding. Question three is what really animated the injunction. And question three on the verdict form compared the logos. But we don't need to glorify the logos. The logos were included almost in the nature of a lesser-included offense, and Judge Lawson says, well, you've been convicted of everything. I'm only sentencing you on the lesser-included offense. We're just skipping the effects of question one, glorifying the logos. Question one was comparing a word mark, a plain, unstylized mark, with the universe of defendant's marks. And the necessarily confusing part of that is the plain letters BMF. That's the teaching, really, of the Banff case. It involved beware, and it's the same reasoning. It was the defendant's use of marks. You look at the common element between the two confusing marks. Defendant's use of a logo or the plain mark BMF wheels, as Judge Moore asked about, infringes CFE words marks for the very same reason. And Judge Lawson recognized the confusing nature of the logo but failed to recognize the confusing nature of the plain BMF. They infringe, in the same manner, the commonality of the term BMF, and for the same reason. It's really the misappropriation of the BMF letters that is the common element between those marks. Every other feature of the defendant's logos are actually items that distinguish that logo from plaintiff's registered plain word mark. If you think maybe of two cars that come off the line, you have two Ford Tauruses that come off the line before paint's applied. You've got plain pieces of metal, Ford Taurus, and one you apply paint to. You turn it into a convertible. You add special tires and wheels to. And then you put them in front of the judge. And the judge says, well, I find the thing to be confusing about that to be the fact that one's a red convertible with special tires. That can't be the elements that are confusing about the fancied-up car. The thing that must be confusing is that they're both Ford Tauruses or that they're both a similar type of car. You can't look at a distinction and say I'm addressing the confusion by preventing them from utilizing features that are distinctive about their mark. You have to, in order to give force to the finding of the likelihood of confusion, the injunction has to enjoin that which is confusing. So would your position, taken to the logical extreme, mean that no one could ever use BMF on automotive products? No, I think each case is going to present, if there's a different defendant, I think is the suggestion. Each case would require a unique examination of the different Frisch factors. But here the jury did that and found this defendant is not allowed to use it for its products. And I think automotive parts, I think you'd have to consider the relatedness of goods, whether the automotive parts are trying to reach the same type of customers. All the factors that the jury went through and the judge instructed them to go through when they made the factual finding of likelihood of confusion. But that factual finding was binding on the court. I think the parties spent some time briefing that the safe distance rule, I think that this court has decided that the safe distance rule does apply. But I would submit that under the question one, the safe distance rule is basically once you've been found guilty of being an infringer, as the jury found here, you need to back off a little more than any other competitor or someone else in the realm would do. But I would submit that this is not even a case for the safe distance rule because the jury's finding that the word mark is confusing doesn't require application of the safe distance rule. Judge Lawson actually allowed them to expand the margin beyond what the jury found, allowed the defendants to expand the margin. The other really critical issue is the attorney's fees. This is a matter of state law that's reviewed de novo. Judge Lawson's interpretation of the state law was that in order to award attorney's fees, there has to be a requirement of the finding of actual damages. That's just not what Michigan state law is. That's an interpretation of state law that's clear, that's erroneous here. And the decision should be overturned on that ground. There is sufficient evidence of an actual loss, and the actual loss flows from a finding of likelihood of confusion. That's settled trademark law. So you're distinguishing between actual damages and actual loss? Actual damages and suffers a loss. And especially in the trademark case, a lot of the loss that is addressed is non-monetary type of loss, loss of goodwill, loss of particularly the Audi case speaks to loss of control of reputation, and that was part of the evidence that was put before the jury, evidence of those specific types of injuries. I thought I heard you earlier say that the court must award attorney's fees. Are you really saying that attorney fees would be merited here, that it's not a mandatory requirement that the court award attorney's fees under the Act, that it's permissible? I think the amount of attorney's fees, the reasonableness of the attorney's fees, in light of all the factors, the judge can make a determination on that. But the attorney's fees come with a finding, as the judge did here. He awarded statutory damages $250 under the Act. So recognize the Act applies, but the plain text of the Act says you're entitled to actual damages or $250, so one of those two things, together with reasonable attorney's fees. And the judge's discretion is in determining what is reasonable. Okay. Thank you. Thank you. Mr. Cantor? Yes, Your Honor. Thank you. My name is Mark Cantor, and I'm here on behalf of BMF Wheels and Brock Weld. You'll handle all of your arguments in this 15-minute period. Okay, thank you. Great, thank you. So we are the appellee, cross-appellant, and appellant. We have all the titles. Yeah, that's right. Your Honor, interesting case. The nice thing about trademark cases is everybody gets a gut feel for them when you first hear about them. There's a lot of law out there, but you get a gut feel right away. I'm going to start with AutoZone, the AutoZone Sixth Circuit case. They basically broke down the scenario of related goods. And this case is all about relatedness of the goods. It goes to every aspect of the case, including the injunction and everything else. AutoZone talks about cases in which there are direct competitors, which means confusion is likely. Cases in which they're somewhat related but not competitive. Confusion depends on other factors. And cases in which the services or goods are totally unrelated, in which case confusion is unlikely. I submit the third scenario applies here. There was an interesting quote by the Sixth Circuit in the homeowner's case where they cited the district court judge and said, what idiot who wants to buy an automobile part would go to a radio shack? Well, I submit what idiot who's going to buy wheels would buy a cylinder head? Or what idiot who wants to buy a cylinder head would buy wheels? These things are so unrelated, and I'm not really sure. We think we know where this case went off the track. And it went off the track on relatedness of the goods. And we think it went off the track on the evidentiary errors made by the court and the clear misstatements by counsel for plaintiff, which are not disputed as being false on this record. That's really important. This isn't a matter of interpretation or stretching or arguing inferences. He made two flat-out false statements to the jury related to the key issue of relatedness of the goods. And he's not here today, unfortunately. There was no objection made when he purportedly did that. So that's not something in your favor. Your Honor, we objected to the admission of the evidence, which should not have been in the record because we said it was prejudicial. And at least my understanding is after 34 years of practice is you don't jump up in the middle of someone's closing argument. I dealt with it in my response to the closing argument, but I didn't have the record for it. You do jump up if it's an important enough matter and you want to preserve your position. Well, Your Honor, I don't know if objecting to an argument, which, as you said, you know is not evidence, is necessary on an evidentiary error here today. Well, I don't want to belabor it. You didn't object. I did not object during his closing argument. You are correct, Your Honor. But that doesn't mean – I don't know. If I don't object to him lying, it's okay. I don't know if that really follows. We're here on an undisputed fact. He told the jury that the only time the trademark office considered their mark, they rejected ours. And that was a flat-out lie. And whether I object or not doesn't change the fact that it's a flat-out lie to the jury. And the only reason they were able to do it was because they kept out the evidence that should have come in on tires and they misled the court to enter evidence that shouldn't have been in, which is BMF off-road. If you look at what – look at that office action, if you can, for BMF off-road. It's four pages of legal argument and case law citations from the trademark office, which invades the providence of the judge to instruct the jury on the law. And that is what's the critical factor in this case. Because if we look at the fishes factors in this case, it's not even a close call. Strength of the mark. They have BMF for cylinder heads. They have a registered trademark. Virtually no sales, no advertising, no surveys, nothing. The mark basically sits out there. It's a naked mark with no strength. We look at the next one. That doesn't get around the fact that they were – they filed their application for their mark before your client did for yours. And the mark is still BMF. And anybody who sees that is going to think they came – the marks were from the same source, even if it's used for different merchandise. Well, Your Honor, I would disagree with that, and that's why I go through the various factors, which leads me to they had one supposedly anecdotal version of actual confusion. They put in this hearsay statement, which I objected to, and then I've got a declaration from the guy who said, hey, I don't even own BMF wheels. I'm not confused. The judge wouldn't let that in. I mean, almost every issue – Were there any surveys, consumer surveys or polls that were commissioned and done that were submitted in evidence on the issue of confusion by your client or, for that matter, by your opposing party? No, Your Honor, and it was their burden of proof to put that in, not mine. Well, I didn't ask whose burden it is. I just asked, did either one of you submit such a thing? Because if you get on your high horse and make all these broad statements about whether there's confusion, I'm sure it may be their burden, but if you don't have anything that speaks to confusion one way or the other, your argument is not as strong as it would be if you did have such evidence. Your Honor, I don't know how you – you're asking me to prove a negative. I'm not asking you to prove anything. No, no, I – we said there was no likelihood of confusion. There would be no proof. Well, that's just a ball statement. You got – the plaintiff is using BMF, your clients are using BMF, and then you jump up and say there's no prospect for any confusion, and I'd love to take your word for it, but you're not providing anything to support it. I would love for you to take my word for it, too, but let's walk through the Frisch's factors. Strength of the mark, weak. Okay? Relatedness of the goods. Why is it weak? BMF is very – it means BMF is very specific. It is absolutely arbitrary when it comes to whether the mark is protectable, but that's not the same as strength of the mark. Strength of the mark is what association the mark has in the minds of the consuming public. They had no survey that anyone recognized their mark as being associated with them in the minds of the consuming public. There was nothing. And virtually, I think, five customers, ten customers. Well, what evidence did your client adduce on that, taking into account that it wasn't your burden? But what – but factually, what evidence did you submit on that issue? We put evidence the people associated with our mark. We put our advertising in, our sales in. That's generally how you show it. We've been much more successful. I mean, if you look at the two companies, they've got – they sold like five or six cylinder heads a year, pairs of cylinder heads. We sell thousands of wheels. We show that our mark is strong. Why is how much you're promoting the mark – why does that indicate the strength of the mark? Doesn't the strength of the mark go to issues like the distinctiveness of the mark? The distinctiveness goes more to registrability, whether you can register it, or whether it's protectable. Strength is how it's recognized. Yeah, but you – we know that it was protectable because you had registered and so had the plaintiff. So that really wasn't the issue. It was not the issue. That's why I wanted – if I wanted to kind of go ahead through the other fishes factors. I'm just saying that there was – they didn't show anything to show the mark was associated with them in the minds of the consuming public. Well, neither party – I mean – we weren't suing them. We weren't asking them to stop using it for cylinder heads. There was no cross-claim against them. We didn't have to do that. We don't think there's a problem. Yeah, but I mean the issue of the strength of the mark as defined by you was a critical issue as far as you were concerned. The most critical issue was relatedness of the goods. We don't believe these goods are related. Their cylinders are primarily used for high-performance automobiles. We make wheels for trucks. And we don't believe they're related. And that was really what the case was. You know, if McDonald's hamburgers found out you were using their golden arches and other things on your wheels, I think you'd be facing a lawsuit, even though the merchandise is not at all related, unless you got a license from them. You are absolutely correct, and that's what they – they are not McDonald's. McDonald's sells billions of hamburgers. They sell five sets of cylinder heads every year. But they're in the commercial marketplace is really what the point is. Both of you are in the commercial marketplace. It's a $270 billion market, Your Honor. You don't get the whole market because you sell one part. That's old law. That's old law from here. I just wonder if we're spending time on something that's really not a big issue here. Well, we think it's a big issue, Your Honor. So your opponent is arguing that the injunction should be broadened because the limitation by the district judge of the injunction to just not using BMF alone doesn't comport with the jury finding. How do you respond to that? I disagree with that. I think if you take what they say at face value, the court has no discretion on injunctions. Every time someone wins, the court has no discretion. The Supreme Court made pretty clear in eBay that a plaintiff has to show irreparable harm to get a permanent injunction. There will be no more presumptions. You don't just get a presumption of harm because you win. They came forward with nothing. They didn't file a single declaration or exhibit. They relied almost exclusively on the presumption of harm. The only thing that the judge looked at was this one instance of confusion, which we think wasn't even confusion to begin with. And we had a declaration that the judge wouldn't let in, which said, I'm not even confused. But even if you'd given that one, that's not irreparable harm. They didn't come forward with enough. And this is why the judge got it right. The goods aren't related. Unless you want to say anything in the 270 billion aftermarket auto parts are related. No one's going to confuse the two. What he did was, by the way, just understand, we think the scope of the injunction is fine if you believe that the underlying decision is correct. And we think it properly balances everyone's needs. He said, look, I'm not going to destroy your company by making you change your name after you've built up this goodwill, and now it's, I don't know, it's eight years or something, and I'm not going to do that to you. You can keep using it, but you can't go into other automotive parts. That's what he did. And he properly balanced the equities, and he properly applied all the factors of eBay. And I believe he came to the right conclusion if you assume the underlying decision is correct. And I think that if you go the other way, if you say that we can't use BMF, then the judge has no discretion at all. There's no dispute that the plaintiff registered their mark first, is that right? No, that's correct. Okay. Do you have in the case law anything on what happens when there's a mistake by the people at the trademark office in accepting a mark when there's a prior mark already there? That's basically what happened here, wasn't it?  That's the point. This is how it all got off track. Well, the plaintiff got there with their mark before your client got there with theirs. My client filed for wheels and rims. They had a registration for cylinder heads. The trademark office allowed our registration. But that was a mistake. No, it wasn't. In that they should have looked to see in these other product categories to see if anybody else had registered BMF even associated with another product. There should have been some checking, should there not? They did. But he didn't find it. We don't know that. The examiner said, I ran a search, and I didn't find any marks that conflict with this mark. You can't take from that. In fact, there's a presumption that he did consider it under the law. We just don't know what his search consisted of. Is that what you're saying? No, we know what his search consisted of. I thought you just said you didn't know what he did. No, we know what he ran. He didn't attach what he found. They don't ever attach what they find unless there's a problem. And that's why we don't know what he did. Your Honor, if you take that position, you are under- I'm asking you a question. No, no. He was not deposed, and general examiners will not be deposed in these cases. But under patent law and under trademark law, there's a presumption. What do you mean they won't be deposed? Is the law saying they can't be deposed? No, generally the commissioner won't allow them to be deposed. They move for protective order. That's what happens. You didn't attempt to depose them? No, no, because it's a big fight usually. Because you're undercutting the whole administrative system then. If you want to question examiners, patent or trademark examiners, on what they did, you're undercutting whether the rights that are granted are valid. And that's why they don't go there. We presume that he said, I ran a search, I didn't find anything that conflicted, and the law presumes that he reviewed everything that was necessary to issue that. That's why that BMF tires is so important. Even after all this, they gave us a registration for BMF tires over their registration for cylinder heads. I don't know why you didn't go to the trouble, even if it would have been difficult, of trying to depose the man to see what he did. Then we'd know the answer to some of this. Your Honor. I mean, you've got a mindset as to how every one of these cases should go, but we're supposed to be trying to get to the truth of the matter. I want to get to the heart of this because this is where the BMF tires is so important. The Patent and Trademark Office, we filed for BMF for tires. They allowed it over BMF for cylinder heads. Perhaps mistakenly. That's even not the court's providence to even do that. What's not the court's providence? They did not file a case to cancel. Even to this day, they've never filed a case. I'm not following you. What is not the court's providence? There is no cancellation petition pending with respect to BMF tires that it was erroneously allowed over their mark, is what I'm saying. Your Honor, let me just touch on the attorney fees. You can take a few more minutes. Okay, thank you. We have a lot of questions. On the attorney fees issue, everybody raises the Michigan Consumer Protection Act as an add-on to all these cases. And the Sixth Circuit, you guys have ruled many times that, look, if you find likelihood of confusion, it's a violation of the Michigan Consumer Protection Act. Attorney fees are never mandatory. And I don't care. That's what they're arguing, that you always get attorney fees. But aren't they arguing that the district judge mistakenly thought you had to have actual damages? I don't know. It's enough to have loss. I don't know that that's wrong or not under the law. The case they cited is an unpublished court of appeals case, which specifically says it's not precedential. But I don't know of any case that says a judge has to award attorney fees under the MCPA. It's always discretionary with the court. Number two, though, we had a stipulation on the record here. We were in chambers working out the jury instructions on this. We had all kinds of verdict forms and jury instructions on the Michigan Consumer Protection Act. In order to streamline, we agreed that if they won on this, it would violate the MCPA, and the judge would have the discretion to decide attorney fees. And it's right in the record. We've cited to it. And that's exactly what happened. He exercised his discretion, and he didn't award attorney fees. And also, this isn't an attorney fees case. The jury found that our client adopted the mark, got a trademark, did it in good faith. There was no willfulness. This just isn't an attorney fees case. And for them to say they weren't asking for damages in this case just isn't true. They were asking for disgorgement of our profits on the case in chief, like over $1 million, which we got thrown out. And they were asking the jury for $300,000 or $400,000. So it's just not true. So unless there's any other questions, that's all I have. Okay, thank you. Thank you, Mr. Cantor. Thank you. There's one common problem with most of the specific issues raised by defendants on appeal. They either acquiesced in the ruling at the time, they failed to raise an objection, the otherwise failed to preserve the issue for appeal. On some of the evidentiary issues, they brought, in fact, the evidence in through other means. On the judgment for matter of law, I think the panel can dispose of this appeal without even reaching the merits. They never raised it as a motion under Rule 50A before the jury was sent out. They're not allowed to raise it under Rule 50B after the jury comes back. It's a renewed motion. They never brought the motion in the first place. They're not allowed to now bring it on the likelihood of confusion issue after the case is decided. But even looking at the substance of it, they're only really allowed to overturn the case or the movement is not entitled to J-Mal unless there is a complete absence of proof on the issue. And what you heard from Mr. Cantor, which should be very clear, is there is a lot of evidence in this case on both sides, on almost every single Frisch factor. All of that, both sides' evidence, puts together a mountain. And Mr. Cantor wants to walk up and remove a couple of rocks from the mountain and put another couple of rocks on and move it around and say, well, it's no longer a mountain. It's still a mountain. You've taken a few specks off it. Whether or not the evidence that was excluded is excluded from consideration or evidence that was admitted is considered, you still have a mountain of evidence that the jury could have drawn a conclusion of likelihood of confusion or possibly could have drawn the other way. In this case, they cited for the plaintiff, and there's evidence on both sides, and that requires upholding of the denial of the judgment for the J-Mal. I do want to, I guess, address Mr. Cantor. I think he's misleading the panel on what the requisite standard is for strength of a mark. The strength of a mark stems, as Judge Clay correctly pointed out, from the uniqueness of the mark. Three things, really. And you can look at the Daddy's Junkie case, which is a Sixth Circuit case, and the Express Welding case that was also cited in our brief. It's the result of the uniqueness of the mark, the advertising efforts, and where the mark falls on the spectrum of generic to arbitrary. Well, there's strong evidence on each of these points for CFE racings. BMF is a unique term, notwithstanding the one copier. There was evidence about the advertising costs, annual advertising costs, that was testified to by the marketing director of CFE Racing. And I think the jury can look to their own conclusions and realize that BMF is an arbitrary selection of letters or an arbitrary descriptor applied to, in this case, racing heads, but to the spectrum of products that my client sells. So I think it's a very strong mark. And at least there is substantial evidence of strength from which a jury could infer strength. And you can go through each of the different Frisch factors and find evidence on our side for those. But even when you don't, Mr. Cantor talked about the actual confusion. When there's no evidence of actual confusion, that is not a factor that falls in defendant's favor. That then becomes a neutral factor. In trademark cases, there's a reality that it's very difficult to find actual confusion. Someone who is confused, one often doesn't realize they're confused. Maybe not until much later. How would people be confused about a cylinder head versus wheels? Well, it's not a question of they're confused about what product they're buying. They're confused about who is associated with the product. So does BMF then cannot be associated, in your view, with any automotive product? Well, with the automotive product that was put forth at trial, and I think that Judge Lawson, in enforcing his injunction, would have some discretion. So maybe if they did automotive air fresheners, I think Judge Lawson would say, well, that's, I guess, an automotive aftermarket part, but I think that's sufficiently different that it wouldn't fall within the scope of the injunction. But here we're talking about parts bought by auto enthusiasts, aftermarket parts. So I think it's, the goods are actually very related, and there was evidence on both sides on that specific issue. Are the wheels just for trucks and the cylinders not for trucks, or is that wrong? That's not true. And there was evidence submitted, there was two things. There was a catalog, the defendants published an annual catalog that showcases their goods. It's available throughout the year on their website. It's transmitted at shows to people, and I think it's mailed out to people as well. And in one of the catalogs, they had a stock car, a street racing car, that you could outfit with wheels. And then in another posting on the defendant's Facebook page, there was a picture of, I'm sorry, I'm not an auto enthusiast, but I think it was a Dodge Charger, which is a sports street car, so showing that they use it. And then there's also, I think, a feature that was submitted into evidence of a news report on their wheels showing how they were used to trick out, so to speak, a street racing car. And our product would obviously be used on any product and on any type of really engine. I think there was testimony that it could be used on a boat, but they're not really used for that. So yes, certainly trucks would fit under where we're selling our goods as well. Thank you, Mr. Brown. Counsel, we thank you for your arguments today. Very much appreciate it. The case will be submitted.